UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Rev. Fr. PRISCO E. ENTINES,1            )
                                       )
        "In Propria Persona"           )
              Plaintiff                )
                                       )   Civil Action No. 06-477 *RMC*
                                       )   Declaratory and Compensatory Relief
                                       )   with Damages
                                       )   Jury Trial Right Re-invoked
UNITED STATES, 2                       )
                                       )
             Defendant                 )

**RECEIVED**

MAY 7 – 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS</u>
AND MOTION TO AMEND THE COMPLAINT

The instant case is before the Honorable Court because of the Defendant's "Motion to Dismiss"

(Dkt. #6) with an attached 'Memorandum of Points and Authorities' and a "Proposed Order" for the

dismissal of the complaint, alleging among other things that the "Statute of Limitations" and the non

-waiver of Defendant's Sovereign Immunity, does not vest the Court proper jurisdiction over the World

War II service-related money claims. Even the declaratory relief on **instant**, Native-born U.S. is

alleged to be beyond the province of the Court.

Against all the Defendant's contentions, the herein-Plaintiff, very strongly disagree on threefold

legal basis: (1) Any violation of the U.S. Constitution and the constitutionally-protected and/or

universal human rights of persons, whether U.S. Citizen or Alien vest the Court with proper

jurisdiction; (2) The Defendant is not over and above the U.S. Constitution and International covenants;

_____

1 The typo correction of ENITNES to ENTINES as duly recognized by the Court is hereby

gratefully acknowledged.

2 "UNITED STATUES OF AMERICA" as the FIFTY (50) States of the Union is substituted

with 'UNITED STATES' which is a Corporation twice (2x) incorporated in Delaware, Pennsylvania.

And finally (3) The flagrant fraud on Native-born (Instant) or, at the very least, Naturalized U.S. Citizenship aggravated by massive War-pay and VA benefits fraud would NEVER admit any "Statute of Limitations" in any Constitutionally-created Court of competent jurisdiction that has the highest mandate in the Oath of Office for every sworn-in Judge "to support, protect and defend the U.S. Constitution" with "So help me God" perjurious invocation, if not lived up to.

Due to the fact that Plaintiff has been, surprisingly, denied a competent and honest "Pro Bono" Court-appointed lawyer, that, ironically, even a criminal is provided, for a fair and just "due process" and 'substantive justice', with the indulgence of the Court, under such a procedural 'duress', Plaintiff, reiterate and re-invoke his fundamental right to a **jury** trial under Article VII of the Bill of Rights which confers competent jurisdiction on the Court over the instant case.

Gratitude for the Court's granting the second "Out to time" "Motion to Extend Time" by virtue of the mentioned cited 'duress' Plaintiff, is forced, beyond the province of his expertise, to provide the Court this preliminary "*Memorandum of Points and Authorities*" and the "**Proposed Order**" to Deny" Defendant's "Motion to Dismiss" as scheme to obstruct constitutional, substantive Justice for "de jure" Instant, Native-born American-Filipino Veterans and their families.

Furthermore, Plaintiff, hereby, present a "*Motion to Amend*" the original complaint into a "**Declaratory and Compensatory Relief with Damages** on **Native-born (*Instant*)** U.S. citizenship based on **Afroyim v. Rusk (1967)** indisputable U.S. Federal Supreme Court decision unbiasedly applied to Plaintiff's U.S. National-reduced father – PFC. ENRIQUE HAPA ENTINES, *born on July 17, 1905 in the U.S. Colony-Philippines* and also, his (Plaintiff's instant, Native-born U.S. citizenship) being *born on October 1, 1943 in the U.S. Commonwealth-Philippines*. Per the "English" *Common Law doctrine* under which "nationality" and/or citizenship meant "*birth within the allegiance of the King*" affirmed by the precedent **Wong Kim Ark v. U.S. (1898) 169, 18 S. Ct. 456, 42 L. Ed. 890.**

The Honorable Court is put on judicial notice about the requested "Clerk's Certification"

whether the Court is a Constitutional Article III Court that has a Constitutional jurisdiction and mandate to genuinely interpret whether the "English" Common law doctrine supra "ex proprie vigore" or automatically applied to the Plaintiff's father and to the Plaintiff, respectively or NOT.

Likewise, the Honorable Court is reminded, with due respect to all Defendant's lawyers that they (Defendant's lawyers) be required to present to the Honorable Court their respective, applied for and duly issued licenses to ensure fair and honest, equal justice for all and prove that they fairly, justly and officially represent and which of the Court: 1) The United States of America Court ("USDC")3 representing the FIFTY (50) Federated States or the District Court of the "United States" as a Delaware Corporation that was twice (2x) incorporated,   technically known as "DCUS".

Plaintiff, beg · the utmost understanding of the Honorable Court about the afore-mentioned, requested Clerk's Certification on the Court as a Constitutional or Legislative Court along with the licenses and respective Court(s) being represented to ensure Plaintiff's Constitutional and fundamental rights that per his 22 years of serious discernment have not been duly protected by the concerned U.S. agencies tasked with Constitutional mandate to do so for the real and honest administration of "equal justice under the law" without which "justice will be a travesty". And Plaintiff, candidly believe that the Honorable Court would not entertain any doubt or bias to deny such a just and constitutionally-founded request or petition.

---

3 Plaintiff reserve his right to present his Brief and/or "Expert Witness" on the distinction of the mentioned "USDC" versus "DCUS" at the Jury Trial.

Respectfully submitted,

Rev/Fr. PRISCO E. ENTINES
War-Orphan Plaintiff - #06-0477

Dated: May 5, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rev. Fr. PRISCO E. ENTINES )<br><br>"In Propria Persona" )<br>Plaintiff )<br>v. )<br><br>UNITED STATES )<br><br>Defendant ) | Civil Action #06-0477<br>Declaratory and Compensatory Relief<br>with Damages<br>Jury Right Trial Re-invoked |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### PREFATORY STATEMENT

In the United States the true guarantee of fundamental, inalienable, individual, universal, human rights is enshrined as the life-force of the sacred instrument, commonly known as the Constitution of the United States of America. The people feel secure, knowing pretty well, that all those who wish to rule with the corruption of absolute power, completely devoid of reason and totally without mercy and human compassion cannot thrive or flourish in our republican form of government. Our U.S. Constitution stands ever vigilant precisely against such evils and stand ready to strike wherever it lurks its ugly head. The Constitution is the vanguard in the perennial struggle for true freedom and objective, universal justice. It guarantees the rights and liberties of the ordinary man and woman and preserves protects, defends and/or vindicates them.

The protection it affords extends to all "persons" both natural and juridical. It is not limited to "citizens" or 'nationals' nor does it exclude "aliens." It is color blind in that it does not care if the person is white, black, yellow, brown or red, a Mongolian, an Indian, a Mexican, Filipino or African Negro.

The supremacy of the United States federal constitution is unquestioned. It is the supreme law of the land. And any law that contradicts it is invalid from the very beginning. See Marbury v. Madison

(1803). Briefly put any statute, to be valid, must conform to or in complete agreement with it, and therefore, with all the relevant provisions for amending it. Indeed, it is impossible for both the Constitution and a law contradicting or violating it to be valid; one must and has to prevail. That **one** that must and has to prevail is the Constitution. Succinctly this is stated thus:

The general rule is that an unconstitutional statute, though has the appearance or form and name of law, is in reality no law, but is wholly void and ineffective for any purpose; since unconstitutionality dates from the statute's time of enactment. *An unconstitutional law, in legal parlance, is as inoperative as if it had never passed. Such a statute leaves the question that it purports to settle just as it would be, had the statute not been enacted.*

Since an unconstitutional law is void, the general principles follow that it imposes no duties, confers no rights, creates no office, bestows no power or authority on anyone, affords no protection, and justifies no acts performed under it ....

A void act cannot be legally consistent with a valid one. An unconstitutional law cannot operate to supersede any existing valid law. Indeed, in so far as a statute runs counter to the fundamental law of the land, it is superseded thereby.

No one is bound to obey an unconstitutional law, and no courts are bound to enforce it."
(**Sixteenth American Jurisprudence**, Second Edition, Section 177. See also 16A C.J.S. 320).

It is submitted that it is beyond the alleged "plenary" (not absolute as delegated only by the people) of U.S. Congress and the constitutionally-created U.S. Courts to arbitrarily and unilaterally change or alter a very fundamental law on *U.S. Native-born citizenship as the most basic, very precious Birthright of all rights*, automatically acquired by reason of birth in "U.S. soil". With only and only two (2) exceptions: (1) Children of enemies; and (2) children of diplomats.

To *be deprived of Native-born Citizenship is the most criminal and cruelest act of tyranny or grossest "ultra vires"* of any authority. *Second to it is slavery.*

- 2 -

NATURE OF ACTION AND RELIEF SOUGHT

Plaintiff is an Orphan of a United States 1901 organized Constabulary member and World War II Conscripted Casualty-Hero-Veteran, who (the latter) as a U.S. National swore allegiance to the United States of America and the United States Armed Forces in the Far East in defense of the U.S. Constitution and its Territories from the invading Imperial Army of Japan.

Defendant despite the "English" Common law doctrine on the acquisition of U.S. Citizenship since time immemorial has arbitrarily and unilaterally changed and/or altered substantially very fundamental, basic and most precious right of all rights tantamount to indirectly amending this very important, birthright citizenship acquisition fundamental provision. Thus, Defendant created different and non-constitutionally-based, different statuses as U.S. National-non-citizen and Resident Alien statuses commonly known as "Green Card" (status) diametrically violating, if not vulgarly desecrating the United States Constitution very priceless citizenship acquisition provision. Not to mention of the "uniform" rule constitutional mandate that was grossly undermined in Section 8, Subsection 4 of the U.S. Constitution.

Aggravating very sadly, if not tragically this gross abuse of this constitutionally-delegated "plenary" (not absolute,though) powers of the Defendant, some Courts, unfortunately, have, in a way connived, in this brazen violation of the U.S. Constitution by inconsistent and contradicting, if not embarrasing and vague interpretations on this most precious right of all birthrights – Native-born United States Citizenship, that was put into final and permanently and inarguably unchangeable decision in AFROYIM v. RUSK (1967) but which was deliberately concealed and very suspiciously, given full teeth in its repeal of the "citizenship retention" unconstitutional requirement. But again the said repeal was intentionally-hidden; enacted very late sometime in October 10, 1978 and not honestly or unbiasedly implemented remaining an inherent unknowability to very, very many. Especially to U.S. National Filipino soldiers who were World War II Conscriptees along with their families.

It is submitted   the "doctrine of vagueness" render any statute or judicial opinion/decision unconstitutional. And the Honorable Court is put on judicial notice on the cited cases here supra and infra that have a very vital bearing in the unbiased decision in the instant case and the just and appropriate, final

- 3 -

interpretation and judicial declaration on the Instant, Native-born Citizenship entitlement by the Plaintiff's U.S. National-reduced and War-conscripted father and the Plaintiff's himself.

It is submitted that the question of citizenship is very vitally relevant and of utmost crucial importance to the issue of War-earned (inherently/derivatively) full and equal War base pay, allowances, VA, Social Security and other benefits, rights, privileges and immunities that were even enjoyed by the 116,000 Alien-volunteer-enlistees (not U.S. National and War Conscriptees, like the Filipinos) in the U.S. Armed Forces during World War II, from the Sixty-six (66) U.S. Allied countries. And this is very particularly true, since in <u>JACINTO A. SABANGAN, JR. et ALS. V. COLIN POWELL (03-16426 D.C. No. CV 02-00039 – July 1, 2004, 9th Circuit Court) (Exhibit 1) in ironic contrast or appallingly-inconsistent decision to RABANG v. I.N.S., 35 F. 3d by the same Ninth (9th) Circuit Court of San Francisco, California. (Exhibit 2) INSTANT U.S. Citizenship was granted to Children of Alien Parents, born since 1978 in the U.S. mere TRUST Territory of the Northern Marianas NOW a U.S. Commonwealth. See,</u> also, SECTION 322 Child, of Alien Parents, born in Puerto Rico per October 14, 1940 Act supra, whose INSTANT, Native-born U.S. citizenship is granted. It might be very interesting to note that fundamental or natural rights that include citizenship automatically, fully and equally apply even to unincorporated Territories. The Reid v. Covert (1957) decision's warning is very crucial; So with Cincinnati Soap Co. v. U.S. (1937), Gancy v. U.S. (1942-44), the Insular Cases, specifically Downes v. Bidwell, et als.(1901) and In Re Rodriguez (1897) will be very informatively decisive..

It must be very importantly noted that Plaintiff's father was by mandatory training per 1918 law originally enlisted with the Europe-patterned Constabulary and as U.S. National in the very same Constabulalry unit integrated into the Philippine Commonwealth Army in 1935, he was ***deliberately*** and ***criminally ordered*** **under the *Articles of War #58's "death penalty"*** to the U.S. Federal World War II service by U.S. President Franklin Roosevelt on July 26, 1941, four (4) months away before the U.S.- provoked Pearl Harbor bombing that ignited the alleged "War of Infamy" with the Japanese Imperial Army.

Plaintiff, therefore, invoking Section 1331 of 28 U.S.C. that vests the Honorable Court with the

- 4 -

needed jurisdiction whereby the Honorable Court is asked to finally and permanently declare if Native-born U.S. citizenship was automatically acquired by the U.S. National-demoted Plaintiff's father and Plaintiff, himself, under the "English" common law doctrine.

Under the same Section supra the Court's jurisdiction is established and is asked to declare with finality that Section 405 of 1990 IMMACT; Sections 7001ff., of 1942 Act; SECTIONS 204 (U.S. National status restoration), versus 303, and 324 (Naturalization right versus Section 322 (Instant citizenship of Child, of Alien Parents, born in Puerto Rico) of October 14, 1940 Act; the original U.S. National-non-citizen status per 31Statute, 1881, Treaty Series 344, 11 April 1899;

Moreover, if the Fourteenth Amendment's citizenship clause was and is duly ratified and appropriately applicable, 28 U.S.C., Section 1331 Court's original jurisdiction is invoked by the Plaintiff for the court to declare whether it (citizenship constitutional provision) fully and equally entitled Plaintiff's father and Plaintiff, himself to its citizenship clause provision.

The Honorable Court's proper jurisdiction under the Declaratory Judgment Act, 28 U.S.C. Sections 2201 and 2202 is invoked. Likewise the Court's venue as being proper is established by 28 U.S.C. Section 1391 (b) in the fact that Plaintiff was a resident of Washington, D.C. and was Naturalized in Arlington, Virginia, (a Sovereign State of the United States) as a Federal U.S. citizen4 (Washington being just a "District of Columbia" (D.C.) and NOT a Citizen5 of any of the Fifty (5) Sovereign States, like Maryland or Virginia that currently is a Commonwealth of the United States of America.

HISTORICAL FLASHBACK

It is an undisputed fact that on December 10, 1898, by virtue of the Treaty of Paris, Philippines was ceded by Spain to the United States. In accordance with International law and as provided for in 31 Statute, 1881, TS 344 supra, Philippines became a part of the United States as a U.S. Colony. Thus the Courts have recognized that the Philippine "Islands constitute a dependency over which the United

- 5 -

States . . . exercised supreme power of legislation and administration." Posadas v. National City Bank, 296 U.S. 497, 502 and "retained plenary and unrestricted power over . . . until its sovereignty . . . was formally withdrawn, " (Hooven v. Evatt, 327 U.S. 677-678, 692).

It must be importantly noted that in the above-cited Hooven v. Evatt case also cited by the Defendant in its "Memorandum of Points and Authorities" (Def. Memo p. 3 as 324 U.S. 652, 677-78, 692 (1945) the "vagueness" doctrine reared its ugly head in the different and confusing definitions of the term "United States". It is submitted that since March 1934 till July 4, 1946, the Philippines as a U.S. Commonwealth, especially during the period of the entire World War II immediately after July 26, 1941 War-Conscription Order of President Roosevelt and more particularly on December 8, 1941 when U.S. officially declared War with Japan, the whole Philippines was under the full, constitutional and emergency powers of the U.S. President. Hence, any U.S. National soldier could be arbitrarily shot by any defiance to the Orders of the U.S. President Roosevelt or by any of his authorized subordinates and/or Military Commanders, specifically General Douglas MacArthur and his military staff. Briefly put although there was the "Puppet" 'de facto' but "in potentia" Philippine Commonwealth President in the person of the late President Quezon, it was U.S. President who had all the supreme, sovereign and even total emergency powers over the whole Philippines and its entire populace as U.S. Commonwealth till July 4, 1946. See *December 18, 1941* **War Powers Act in its Section (3), 54 Stat. Page 840** *on the **definition of the term "United States"** as **"including the Philippines"** (Exhibit 3);* Military Order of July 26, 1941 for the call to "active" Federal service duty of all Philippine Commonwealth Army members and its different Insular Force units; **FORM 23 (Affidavits for the Philippine Army Personnel**) where it is very clearly written on the upper left hand portion of the document" **"Province of Masbate"**, "**Commonwealth** of the *Philippines*" and "*United States of America"(Exhibit 4)*. And this was during the entire War that officially ended on December 31, 1946 as six (6) months extension contained in the Military Order of June 30, 1946 by President Truman

- 6 -

releasing all U.S. National-Filipinos from the July 26, 1941 War-Conscription Order of President

Roosevelt; **SECTION 102 (1) {50 U.S.C. App. 512) of October 17, 1940 – Soldiers' and Sailors'**

**Civil Relief Act**, which very lucidly declares that "**active**" '*Federal*' service and/or duty **definition**

*fully and equally applies to* the **Philippines** "*while under the sovereignty of the United States*". (Op.

cit.).

The U.S. Federal Supreme Court had, undeniably, its historical blunders specifically in its very

dreadful opinion on DRED SCOTT v. SANFORD (1857) that compelled U.S. Congress to over-rule it

with the <u>dubiously-ratified</u> FOURTEENTH (14th) Amendment U.S. Citizenship clause. Very tragically

even to this day there is no very clear, genuine and permanently- inarguable interpretation on the very,

very important, priceless,birthright and fundamental U.S. Citizenship acquisition, transfer, loss or

expatriation and most importantly its repatriation and/or re-acquisition.

Among the more notorious decisions after the Dred Scott v. Sanford decision is the the century-

old, hated PLESSY V. FERGUSON's <u>misjudgment</u> that indirectly mentions of the Philippines'

annexation as inhabited by "brown' brothers" rectified by the 1954 Brown v. Board of Education. Of

very peculiar interest that should not escape any Court's attention is the U.S. Federal Supreme Court's

own repudiation of **PEREZ v. BROWNELL, 356 U.S. 44 (1958)** as erroneous and voided decision

finally settled and **corrected by 1967 AFROYIM V. RUSK (1967)** as its most landmark and finally, if

not permanently settled or incontrovertible opinion.

The above justice-failures are also shared by some inferior courts as previously mentioned. .

Most notably is the Ninth Circuit Court of San Francisco, California, that gave a very enigmatic July

2004 decision that was uncontested and un-appealed by the government in JACINTO A. SABANGAN,

JR. et als. v. COLIN POWELL. Perplexing in the the sense that the <u>questionably-ratified</u>

FOURTEENTH Amendment's Citizenship was granted as an INSTANT, Native-born or birthright

(Citizenship) to the aforementioned persons supra for being born, sometime, in 1978 in the mere

TRUST Territory of the United States – Northern Mariana Islands – now a Commonwealth. Yet and very strangely enough, if not egregiously-appalling as flagrantly-inconsistent is the fact that a U.S. National-Filipino conscripted to World War II was denied even his SECTION 303 Naturalized U.S. Citizenship right per October 14, 1940 Act that was amended by Sections 701-705, 8 U. S. C. (1946 Ed.) Sections 1001-1005, and in the IMMACT 1990 per its SECTION 405 respectively. But this reiteratingly would be the case if he was an Alien-resident (not a U.S. National per 31 Statute, 1881, Treaty Series 344 – 11 April 1899 and Section 204, October 14, 1940 Act) in the Philippines as a Commonwealth of the United States during the whole period of World War II till July 4, 1946. See Dr. BERNARDO ORTEGA V. U.S.A #87-5924 (November 21, 1988). Without mentioning the famous Pangilinan v. I.N.S. (1988) and Rabang v. I.N.S. (1980). It is submitted that any claim to U.S. Nationality/Citizenship is "de novo" subject to review by any court of competent jurisdiction, at least per Section 504 of the same cited October 14, 1940 Act. Especially on Instant, Native-born U.S. Citizenship by a very special group that was classified as U.S. Nationals and war-conscripted, who, became victims of despotic racist, policies. See January 9, 1900 – Senate Record of Senator Beveridge Speech about the Philippines.

Since U.S. Citizenship is a fundamental right and it should always be in every sense, it should have been conferred on the Natives of the Philippines but very particularly on the U.S. National-Filipinos that were criminally-ordered to World War II while it was a U.S. Colonial Commonwealth till July 4, 1946, at least. Justice's Harlan's concurring opinion in RASMUSSEN V. U.S., 197 U.S. 516 at 529, 25 S. Ct. 514, 491 L. Ed. 862 (1905) was that "a territory that comes under the complete, sovereign jurisdiction and authority of the U.S., and, without any formal action on the part of Congress in recognition or enforcement of the treaty, and whether Congress wished such result or not, the inhabitants of that territory became at once entitled to the benefit of all the guarantees mandated by the U.S. Constitution that limits the plenary powers of Congress, specifically for the protection of life,

- 8 -

liberty, and property." For these are all considered fundamental and essential, if not natural rights that Congress should not in any way injure with any color of slavery and/or oppression.

`Moreover, Justice Harlan continuing his opinion of dissent said: "Congress cannot suspend the operation of the Constitution in any territory after it has come under the sovereign authority of the U.S., nor, by any affirmative enactment, or by mere non-action, can Congress prevent the Constitution from being the supreme law for any peoples subject to the jurisdiction of the U.S." Supra at 529-530. Although buried in a concurring opinion, Justice Harlan's sound reasoning was affirmed by the court of Appeal of the U.S. Virgin Islands in Soto et al. v. U.S., 1 V.I. 536, 273 F. 628 (3d Cir. 1921) where the Court stated that "(T)he Supreme Court made certain that there are 'constitutional rights of a natural or personal nature of which Congress can not, in legislating for such outlying territories, deprive their inhabitants." Soto et al. v. U.S. 273 F. 633. The same conclusive opinion was reached in a Court of Appeal in the U.S. Virgin Islands in U.S. v. Pollard, 209 F. Supp. 2D 525 (D. Virgin Islands 2002 . where the Court of Appeal declared that "even though persons in the U.S. Virgin Islands were otherwise treated as aliens, the (courts have) held that they are nevertheless protected by (fundamental rights inherent in the U.S. Constitution)" U.S. v. Pollard, 209 F. Supp. 2D 542. In that case, the Court of Appeal held that the due process clause of the U.S. Constitution was a fundamental right that protected aliens in the U.S. . See also Yick Wo v. Hopkins (1897). Thus according to Justice Harlan and the succeeding opinions form the U.S. Virgin Islands, when the U.S. acquired the Philippines from Spain by virtue of the Treaty of Paris of 10 December 1898, specifically by Article III which stated that "Spain cedes to the United States the archipelago known as the Philippine Islands, and comprehending the islands lying within the following line" (omitted)", the U.S. Constitution immediately became operative in the Philippine Islands and along with it came the protection and rights under the Constitution.

The underlying principle under the separation of powers embodied in the Constitution limits the

Court's prerogative to interpret but not to legislate. By the same token, Congress cannot arrogate unto itself to interpret the genuine meaning of the constitution as it applies to a questioned law.

It is submitted that this is what is sought for in the instant case. And it is very sad to note that the Defendant seem to fail to see this, wrongly imputing as "vague allegation that the United States has wrongly refused to confer or recognize citizenship status of his father" (sic) (Memo. Def.'s Motion to Dismiss at 2).

Plaintiff, hereby, notes that Defendant has culpably ignored the cited pertinent Court's jurisdiction, clearly enumerated in the complaint. Not to mention of SECTION 1346, Subsection (a) (2) of TITLE 28, Part IV, Chapter 85 that the Defendant knew or should have known NOT to justify and side-step the very important issue and fact of Native-born U.S. Citizenship's entitlement. It is submitted that the question of citizenship is very relevant and very vitally-crucial to the issue of full and equal War-pay, allowances, VA and Social Security benefits, rights, privileges and immunities inherently/derivatively earned in War under International, Constitutional and Military Laws on War-conscription as U.S. Nationals, if the status is NOT a Racist, legal fiction status.

Plaintiff, honestly, believe with trust that the U.S. Federal Claims Court with the able, honest and competent, legal assistance of the "Pro Bono" Court-assigned lawyer(s), would not prolong the more than 22 years odyssey for equal, racial justice on U.S. Native-born based claims for full and equal War-benefits that were and/or granted the 116,000 Alien-volunteer-enlistees in the U.S. Armed Forces during World War II from the 66 Allied countries.

It is worth of utmost interest for the Defendant to know that just last April 27, 2007, the U.S. Claims Court has ordered the U.S. Government's lawyer-Defendants to answer Plaintiff's complaint and five others of similar circumstance on 11 May instant (2007).

Plaintiff, therefore, based on the above-stated information on the Claims Court-ordered response to the complaint in the said mentioned Court, request the Court to concentrate or focused on

- 10 -

the most vital issue of the genuine interpretation of the English Common law doctrine and/or
Fourteenth citizenship clause's equal and full applicability to the Plaintiff's father and and the Plaintiff,
himself.

As to the claims on the Plaintiff's father's war service <u>wrongfully</u> classified as with the
Philippine Commonwealth Army and allegedly "soundly rejected" by the Claims Court, Plaintiff,
hereby, submits the Defendants' vague understanding and culpable ignorance of hard facts, namely,
that the Philippine Commonwealth Army lost its identity as an Insular or "State" Force of the U.S.-
Commonwealth when it was integrated by INDUCTION into the United States Armed Forces in the
Far East ("USAFFE" henceforth). PERIOD; the entire U.S. Commonwealth-Philippines came under
the full, constitutional and emergency powers of the U.S. President, especially upon the Senate-
approved declaration of War with Japan, until July 4, 1946 by which the U.S. Government assumed full
responsibility under International, Constitutional and Statutory laws on War-conscripted service as U.S.
National-Filipinos; and finally when President Truman hastily proclaimed officially the Independence
of the war-battered U.S. Commonwealth-Philippines, the one and only motive was to deliberately
avoid and escape the huge legal pre/post-War-contracted debts and moral responsibilities brought about
by the war with Japan.

Plaintiff strongly disputes the alleged "soundly rejected" claims by the Claims Court. For if
indeed the "Statute of Limitations" properly applied to the previous and instant case, then, the legal
counsel in the case would be guilty of culpably-vincible ignorance of law. But Plaintiff, solidly holds
its ground that the decision was erroneous, if not void by the Court's ignoring as a procedural
technicality to justify the dismissal, the constitutionally-mandated judicial, strict scrutiny on the alleged
"grandiose fraud", the 'deliberately-concealed facts and inherently-unknowable fraudulent facts of
Native-born Citizenship substituted by a racist, legal fiction status of U.S. National-non-citizen yet
racially-disqualified from full and equal war-pay and unconscionably even, at the very least, from

- 11 -

Naturalized U.S. Citizenship per the July 1863 Naturalization Law for Aliens who volunteer to serve even during no-war period. Not to mention of the double-jeopardy and War-slavery federal policy legalized judicially in Section 107, 38 U.S.C. surreptitiously inserted and forbidden procedurally. Yet very surprisingly UNREPEALED up to this day despite its gross violation, if not vulgar desecration of the U.S. Constitution's 5th, 9th, 10th, 13th and 14th Amendments' respective provisions and the SACRED rights of the U.S. National-Filipinos conscripted to U.S. Federal World War II service under the "death penalty" provision of Articles of War #358.

It is submitted that SECTION 107 (a) and (b), 38 U.S.C. as a mere inserted rider-provision that is procedurally forbidden and in diametrical contradiction to two (2) valid, existing and just laws – September 16, 1940 – Selective Service and Training Act – (that per its specific provision in Section 4 (a) prohibited racial discrimination) and October 17, 1940 – Soldiers and Sailors' Civil Relief Act – (where in its Section 101 (1) {50 U.S.C. App. 511} "active service" or "active duty" definition has been lucidly clear and that it fully and equally applied to the Philippines per its Section 102 (1) {50 U.S.C. App. 513, respectively} "ipso facto" render said rider-provision (the atrocious Section 107, 38 USC supra) Null and Void "ab initio". Without mentioning 16th American Jurisprudence, 2nd Edition, Section 177 and 16A C.J.S. 320. Plus the May 2000 "Ex Post Facto" U.S. Federal Supreme Court decision in CARMEL V. TEXAS that fully covers even Civil cases, like the instant case.

As to the reliefs the Court is asked to grant for the instant Plaintiff, the deceased parents, and siblings no dispute is posited as they are very clear enough to be within the competent jurisdiction of the Court with the presumed and legally established waiver of the Defendant's sovereign immunity based on the legal basis of the claims and of particular mention for a more solid basis is SECTION 1346, Title 28, Part IV, Chapter 85, which the Defendant as cited before knew or presumed to have known that can culpably impute a seeming obstruction of justice or a probable violation of Sections 241 and 242 of Title 28,  obstruction on this very constitutionally-based complaint and "Declaratory

- 12 -

Relief" for final and genuine interpretation and permanent declaration by the Court on a very, very basic, fundamental, and inalienable, universal, human and birthright Citizenship.

It is, then, submitted that there can be no "Statute of Limitations" against this. Nor can "Res judicata" be invoked to stave off its "ex proprie vigore" application, nor are grounds in equity such as laches or estoppel enforceable either on all issues and facts brought forth both in the original and in this amended complaint that (the latter) hopefully, would strongly establish the solid judicial jurisdiction that Defendant denies and intentionally avoids, adopting the arguments that more properly belong to Claims Court's Defendant(s) that should more properly be addressed and decided by the U.S. Federal Claims Court that has its jurisdiction on money claims over and above $10,000.00.

Feeling the inadequacy of time, resources, and expertise needed for the effective prosecution of the case after the Court's denial of a "Pro Bono" lawyer, with due indulgence of the Court, Plaintiff, petitions the Honorable Court, invoking the International "Good Samaritan" law that he be provided a lawyer for a substantive due process, reiterating the re-invoked fundamental right to "Jury Trial". The Honorable Court is, hereby, made aware of the fact that if criminals are provided legal assistance to see to it that their universal, international and/or constitutional rights are not undermined and abusively trampled upon but well protected, why in the world should an Instant U.S. Citizenship claimant denied his right to Court-provided legal aid. And on a very fundamental issue and right to Instant, Native-born U.S. Citizenship, at that.

Additionally, Plaintiff, moves for a stay of proceedings on the all money claims' issues until Instant, Native-born U.S. Citizenship shall have been judicially determined as a Constitutional entitlement to a U.S. National-demoted and War-conscripted Filipino soldier, his widow and his orphan(s). For the World War II or War-related money claims' issues that would qualify as ***War-crime of grandiose Fraud and massive, RICO-colored swindling*** will be competently and expertly argued by the Claims Court "Pro Bono" assigned lawyer that Plaintiff has, trustfully, endowed with proper

- 13 -

authority and representation to vindicate all inherently/derivatively war-earned VA, Social Security and all benefits rightfully claimable by Plaintiff's father and his family members, including but not limited to himself.

The mentioned vague definitions, interpretations and inconsistencies in laws and regulatory policies specifically on U.S. citizenship acquisition either by Native-birth or Naturalization, its loss, transfer and/or reacquisition constitute the very nature of this Plaintiff's action.

There is an actual controversial conflict concerning the entitlement to Native-born U.S. Citizenship between the Defendant and the Plaintiff, especially by the Plaintiff's father as a U.S. National, conscripted to the U.S. Federal World War II, under death penalty and took Oath of Allegiance to the U.S. flag to defend the United States Constitution in the U.S. War against Japan. Defendant's position is that despite the U.S. Nationality status of the Filipino soldiers, who were inducted into the United States Armed Forces in the Far East (hereinafter "USAFFE") are only entitled to Naturalized U.S. citizen per Section 303 of October 14, 1940 Act. Plaintiff's position is that Citizenship is a very precious, fundamental right as a birthright that automatically was acquired by PFC. ENRIQUE HAPA ENTINES by reason of his birth "in U.S. soil" in the U.S. Colony-Philippines on July 17, 1905 and double right by Military service with the U.S. Armed Forces since 1927 originally with the Constabulary and with the USAFFE till March 25, 1945 War-service-connected death in line of War-conscripted duty of 18 years per the "English" common law doctrine.

Plaintiff, therefore, is entitled to a declaration that his PC member and War-conscripted father is a Native-born U.S. citizen either per the "English" common law doctrine and/or Fourteenth Amendment's citizenship clause.

Likewise, since Section 1 of the July 1902 Philippine Organic Act or law specifically excluded Plaintiff's father and Plaintiff, himself from Section 1891of the Revised Statutes of 1874 without basis that should have guaranteed the fundamental, birthright of U.S. Native-born citizenship, Plaintiff

- 14 -

claims an entitlement to a declaration that this particular Section 1 of Philippine Organic Act 0f 1902 is unconstitutional.

The Government's position that even as a U.S. National-conscripted to World War II under death penalty, Plaintiff's father need to apply and is qualified only to Naturalized U.S. Citizenship per Sections 303 and 324 both of October 14, 1940 Act against Plaintiff's stand that being under the English common law doctrine and subject to the jurisdiction and sovereignty of the United States especially when Plaintiff's father took Oath of Allegiance to the U.S. Flag upon original enlistment on July 17, 1927 with the Europe-patterned PC that ended with his War-conscripted death as a U.S. National-Filipino on March 25,1945, he (Plaintiff's father) was by birth and by death an INSTANT, Native-born U.S. citizen, at the very least by both or dual right of birth and military service with combined war-service that ended with a War-Hero-Veteran's death.

Hence, a Court declaration is entitled the Plaintiff whether his 1927 PC father with 18 year military service that ended with his War-conscripted death is an INSTANT American-citizen Veteran by birth and by death.

### PRAYED FOR RELIEF

WHEREFORE, Plaintiff pray for judgment as follows:

1. For a declaration that U.S. citizenship either by the English common law and/or Fourteenth Amendment citizenship clause as a fundamental, very precious right of all rights, was applicable to Plaintiff's father especially as a PC member since 1927 till his World War II conscripted service-death on March 25, 1945, Plaintiff's mother, born on October 25, 1907 and, at least, the Plaintiff, who, (the latter) was born on October 1, 1943 fortunately while the Philippines was a U.S. Commonwealth till July 1946, although under the temporary occupation of the Japanese Imperial Army.

2. For a declaration that Section 1 of July 1902 Act was unconstitutional since it excluded from

- 15 -

U.S. citizenship and other rights secured by the U.S. Constitution, Plaintiff's father and others in similar situation without reasonable basis.

3.  For full and equal compensation for Plaintiff's father's 18 year military service that ended in his War-conscripted death in service; Death Indemnity Compensation for Plaintiff's mother since 1945; and at least Plaintiff's Death Indemnity Compensation since March 1945 till his 18th birthday on October 1, 1961 and his full and equal Educational Benefit since 1962 to 1969.

4.  Plaintiff's suit-related costs, including but not limited to Court, Attorney(s), legal researcher(s) fees, personal researches, travel and representation expenses incurred herein; and

5.  For such other and other and further relief as the Court deems appropriate.

## CONCLUSION

Based on the reasons herein stipulated, Plaintiff, hereby pray that the Honorable Court should deny and reject Defendant's Motion to Dismiss as obstructive of "Due Process" for substantive and true equitable justice, especially to the long-oppressed and racially-indignified yet Instant American-FILIPINO World War II Conscriptees along with their Veteran-Heroes' families.

Very sad and tragic that is brought to the attention of the Honorable Court and that the Court should seriously consider in weighing any unfavorable decision against the grossly betrayed, if not criminally-neglected and heartlessly-abused elderly, sickly and some dying War-Hero Veterans, specifically Plaintiff's War-orphaned families. Versus the many thousand refugees from Europe, particularly the 1966 some 500, 000 Cubans, who, by a stroke of the Attorney General's pen were issued "green cards" which is another suspiciously-crafted "Resident Alien" status and the refugees from Cambodia or Vietnam, who, very invidiously, now all enjoy so many benefits, rights, privileges and immunities as U.S. Citizens. But not the U.S. National-demoted Filipino War-Hero Veterans, who, in a very recent Senate Hearing last April 11, 2007, no less than the Honorable Senator Larry Craig of Idaho and the very Honorable VA Undersecretary, Mr. RONALD AUMENT of VA Central Office, publicly and

obstinately oppose the full and equal War-earned VA benefits of "de jure" Instant American-Filipino War-conscripted Hero-Veterans.

Furthermore, the Honorable Court is, hereby, asked to expeditiously decide on the immediate declaration of the Instant, Native-born U.S. Citizenship of Plaintiff's father, widow and, at the very least, the herein-Plaintiff because as stated supra this is a very, very crucial, and decisively determinant factor on the full and equal War Pay, VA, Social Security and other Benefits, rights, privileges and immunities to which Plaintiff's father, mother and himself are by the U.S. Constitution and other International, Constitutional and Statutory laws on War-conscripted service are juridically entitled.

Additionally, the Honorable Court, as was indicated in the second (2nd) "Out of time" Extension of Time, by the Plaintiff, who, as a resident of Washington, D.C. was Naturalized in Virginia as a District of Columbia (D.C.) Federal3 citizen, that he be advised and assisted in his **expatriation** from D.C. "**federal**" citizen to be a **California** "*State*" **Citizen4**.

Finally, based on all stipulated legal grounds, Plaintiff respectfully request the Honorable Court to deny and reject the "Motion to Dismiss" and grant the prayed for Declaration of Native-Citizenship as a judicial mandate on the Court as an Article III constitutionally-created court.

---

3 Federal citizenship is the political status created by Congress for all Naturalized U.S. Citizen and those born outside the continental and/or the U.S. Territories. Brief on this can be submitted if requested by the Court.

4 "State" Citizen of California is one who, is/was born as a bonafide person in California which is acquired by any bonafide person born in the sovereign "Sate" of California. More details would be provided if, likewise requested.

Respectfully submitted,

/Rev/Fr. Prisco E. Entines – "In Propria Persona"
/ 419 N. Mountain View Ave.#207
Los Angeles, CA. 90026 – Cell: 213-675-9092

Dated: May 5, 2007

## CERTIFICATE OF SERVICE

I, HEREBY CERTIFY that on this <u>5th day of May 2007</u>, a true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES TO SUPPORT THE OPPOSITION TO DISMISS and proposed Order were served upon Defendant by Certified Mail through the United States Postal service, duly stamped with return receipt for delivery to:

JANE M. LYONS, D.C. Bar #41737
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. - Room E4822
Washington, D.C. 20530
(202) 514-7161

Rev. Fr. Prisco E. Entines
"In Propria Persona" - Plaintiff
419 N. Mountain View Ave. #207
Los Angeles, CA. 90026
(213) 675-9092

- 18 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Rev. Fr. PRISCO E. ENTINES | ) | |
| | ) | |
| "In Propria Persona" | ) | |
| Plaintiff | ) | Civil Action No. 06-0477 |
| v. | ) | Jury Right Trial Re-invoked |
| | ) | Declaratory Relief with Compensatory |
| | ) | Damages |
| | ) | |
| UNITED STATES | ) | |
| | ) | |
| Defendant | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant's Motion to Dismiss ("Motion"Dkt. 6).

The Court having reviewed candidly said "Opposition to Motion to Dismiss" and unbiasedly weighed

properly the arguments of both parties,

it is hereby:

ORDERED AND ADJUDGED that the Motion is denied.

DONE as ORDERED this 5th day of May 2007.

_____
Honorable ROSEMARY M. COLLYER
United States District Judge